**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dorothy Weigman, | No. CV-22-02112-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Ed Wertz, et al., | |
| Defendants. | |

On December 14, 2022, Plaintiff filed the complaint (Doc. 1) and an application for leave to proceed in forma pauperis ("IFP") (Doc. 2).  The Court denied Plaintiff's IFP application because it included "gross internal inconsistencies, and it [was] also inconsistent with another IFP application Plaintiff filed on December 20, 2022 in another pending action."  (Doc. 9 at 1.)

On December 27, 2022, Plaintiff filed the first amended complaint ("FAC").  (Doc. 5.)  The FAC is handwritten and partly illegible.  (*Id.*)  The section of the standard pro se civil rights complaint form asking "What are the facts underlying your claim(s)?" is filled out as follows: "Loans on all Easements for decedent loans on easements for Plaintiff text messages of shared accounting of the deed email of Wertz sale of 'entire inheritance' AZ property; Wertz acknowledge decedent did now own her condo nor MBS loans they took out using her identity, using Plaintiff I.D. too."  (*Id.* at 4.)  The "injuries" section is similarly incomprehensible: "Wertz use identity theft and a shell game of loans; 'injury' they dominate the mother with dishonesty to attach corporations, partnership identities of

easement to obtain wealth by manipulating the stock market, real estate market using you and eventually maximize profit for your death; and take investors on your murder." (*Id.* at 5.)  The "relief" section states:

> Wertz uses identities of family for his pump and dump schemes; Plaintiff seeks a cease + desist w/ Wertz and cohorts; 2 trillion in money damages as Mr. Wertz Andy Struve and Rold; w/ [illegible] help acquired; [illegible], Citi, Chase, discovery and Am Ex with Rold and Struve using their murder ponzi making MBS so super lucrative; making people worth more dead than alive; criminal charges too.  Return money to those on Weigman easements; reimburse all invested in the theft of Weigman properties and [illegible]. Cease + desist using family members as MBS trusts.

(*Id.*)

On February 1, 2023, Plaintiff paid the filing fee.  (Doc. 12.)

On March 22, 2023, the Court issued an order setting the service deadline as May 3, 2023.  (Doc. 13.)

On May 1, 2023 and May 2, 2023, Plaintiff filed a pair of motions to extend the service deadline.  (Docs. 14, 15.)  The Court granted the motions and extended the service deadline to June 5, 2023.  (Doc. 16.)

On May 30, 2023, Plaintiff filed a motion seeking "issuance of summons" as well as additional time for service, "corrective spelling" of a defendant and a non-party, and a ruling that the initial complaint was "to be an addendum to the other complaint."  (Doc. 21.)  That same day, Plaintiff submitted summonses for Defendants Ed Wertz, Linda Rold, and Richard Lehn (Doc. 19), which issued the following day (Doc. 20).

On June 2, 2023, the Court granted in part and denied in part Plaintiff's motion. (Doc. 22.)  The Court extended the service deadline to July 5, 2023 and ordered the Clerk of Court to amend the caption to indicate the proper spelling of Defendant Andy Struve's surname.  (*Id.*)  The Court clarified that the FAC replaces the complaint in full.  (*Id.*) Finally, the Court observed that summonses had issued for three of the four Defendants and ordered Plaintiff to "read and familiarize herself with the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure" and "[t]o the extent that Plaintiff require[d] any additional summonses," to "adhere to the procedure set forth in Rule 4(b)

rather than requesting issuance of a summons via motion." (*Id.*)  Notice of this order was emailed to Plaintiff via the Court's electronic noticing system at the email address Plaintiff provided in her request for electronic noticing.  (Doc. 10.)

Later that day, Plaintiff filed a motion requesting that the Court mail hard copies of the already issued summonses by post.  (Doc. 23.)  This motion stated that Plaintiff "sat in in front of a computer trying all day to get into her email account so she can retrieve the summons for this case," but because she was "locked out all day" she requested "the summons to be sent physically." (*Id.*)

On June 8, 2023, the Court denied the motion requesting summonses, noting that "the Clerk issued the summonses in question on May 31, 2023" and that "Plaintiff ha[d] a full month to serve the Defendants to whom the summonses pertain, and therefore one day of computer troubles should not prevent Plaintiff from accessing the summonses electronically." (Doc. 24 at 1-2.)  The Court also consolidated this case with a related case, *Weigman v. Wertz et al*, 2:22-cv-02185-DWL ("Member Case"), which was proceeding in tandem with this case.  (*Id.*)

On June 13, 2023, Plaintiff filed a motion to issue a summons for Defendant Andy Struve.  (Doc. 25.)

On June 14, 2023, the Court denied the motion, noting that the motion violated the Court's June 2, 2023 order requiring Plaintiff to adhere to Rule 4 procedures rather than filing motions for issuance of summonses.  (Doc. 26 at 3.)  The Court warned Plaintiff that continued violation of court orders could result in dismissal of the action.  (*Id.* at 3-4.)

On June 15, 2023, Plaintiff filed an ex parte motion for "removal." (Doc. 27.)

On June 16, 2023, the Court denied the removal motion, as the action had been filed in federal court.  (Doc. 28.)

On July 3, 2023, Plaintiff filed a third motion to extend the service deadline.  (Doc. 33.)  The Court granted the motion and extended the service deadline to August 7, 2023. (Doc. 34.)

On July 31, 2023, Plaintiff filed a motion for summary judgment (Doc. 39) and

1    motion for hearing (Doc. 43).  The Court denied both, noting that the summary judgment
2    motion did "not establish grounds for any form of relief" and the motion for hearing "was
3    incomprehensible."  (Doc. 46.)

4            On August 1, 2023, Defendant Lehn filed an answer.  (Doc. 44.)  That same day,
5    the Court issued an order requiring the parties to file a joint Rule 26(f) report by August
6    29, 2023.  (Doc. 45.)

7            On August 10, 2023, Plaintiff filed a document entitled "Ex Parte – Response to
8    Rule 26 Order; Motion for Lehn's Answer Stricken; As Not Sent in Time; Also Lacks
9    Timing and Accuracy Proving Mirrored Cases Motion for Default Judgment with Richard
10   Lehn, [illegible text] Several Summons Omitted Motion for Default Judgment with Linda
11   Rold and Andrew Struve As They Have Not Sent In a Timely Answer."  (Doc. 47.)  The
12   motion was composed of largely unintelligible and seemingly unrelated typed sentences,
13   heavily revised with handwritten editing between the lines.  Various unrelated exhibits
14   were appended, such that the document in total consisted of 99 pages.   The motion
15   contained the words "petitioner moves for a default judgment with Andrew Struve, and
16   Linda Rold."  (*Id.* at 3.)

17           On August 15, 2023, the Clerk of Court, apparently interpreting this motion as an
18   application to enter default, entered default against Andrew Struve and Linda Rold.  (Docs.
19   48, 49.)

20           On August 17, 2023, the Court denied Plaintiff's motion to strike Lehn's answer
21   and motion for default judgment, reminded Plaintiff "that she must familiarize herself with
22   the federal and local rules," and ordered Plaintiff to "file only 'final drafts,' as opposed to
23   working drafts filled with her own proposed revisions and editing marks."  (Doc. 51.)

24           On August 18, 2023, Plaintiff filed a belated motion to again extend the service
25   deadline.  (Doc. 52.)

26           On August 22, 2023, the Court denied the motion, noting that "[o]nce again"
27   Plaintiff had filed "a typed working draft filled with handwritten revisions and editing
28   marks, in violation of the Court's August 17, 2023 order," which conformed to her "pattern

of filing incomprehensible motions, paired with voluminous unrelated exhibits" and that the motion failed to establish "good cause for further extending the already-lapsed service deadline." (Doc. 53 at 2.) The Court vacated entry of default against Linda Rold, noting that she had not been served, and dismissed her for failure to serve by the service deadline. (*Id.* at 1-3.) The Court also reissued its repeated order to Plaintiff that she "must read and follow the federal and local rules and shall submit only final drafts that do not contain handwritten revisions" and added that "[f]ailure to follow this order may result in dismissal of this action." (*Id.* at 3.)

On August 29, 2023, Plaintiff filed a document entitled "1-10 Response to questions for this case." (Doc. 54.)

On August 31, 2023, Lehn filed Rule 26(f) report which indicated that Lehn's counsel met and conferred "extensively" with Plaintiff on August 24, 2023 but nevertheless included only Lehn's portion of the report. (Doc. 55 at 1.) Lehn's counsel filed a declaration explaining that after the parties' meet and confer efforts, Plaintiff sent Lehn's counsel four emails containing information to include in the joint report, but then she did not respond to three emails sent on August 29-30 soliciting her comment or approval on the draft of the report. (Doc. 55-1.)

That same day, the Court issued the following order:

> On multiple occasions throughout this case, the Court has advised Plaintiff that she must familiarize herself with the relevant rules, follow court orders, and/or not file documents with handwriting on them. (Docs. 13, 22, 51, 53.) Additionally, the Court has repeatedly advised Plaintiff that failure to comply with court orders may result in dismissal of the case. (Doc. 13 at 6; Doc. 51.) Nevertheless, Plaintiff recently filed a bizarre document that, although apparently intended in part to address some of the inquiries required by Rule 26(f), also includes requests to issue subpoenas to various political leaders and a handwritten "motion to remove this judge." (Doc. 54 at 34.) Additionally, defense counsel has now filed a declaration averring that Plaintiff did not participate in the completion of the Rule 26(f) report (Doc. 55-1), as she was required to do by court order (Doc. 45). Accordingly, IT IS ORDERED that Plaintiff shall, by September 7, 2023, file a memorandum, not to exceed five pages, showing cause why this action should not be dismissed for failure to adhere to court orders.

(Doc. 56.)

On September 5, 2023, Plaintiff filed a 26(f) report, signed by Plaintiff only. (Doc.

57.)

On September 7, 2023, Plaintiff filed a seven-page document entitled "Points and Authorities" (Doc. 58), which the Court assumes is intended to be responsive to the Court's August 31, 2023 order requiring Plaintiff to "file a memorandum, not to exceed five pages, showing cause why this action should not be dismissed for failure to adhere to court orders." (Doc. 56.)

Setting aside that the response to the order to show cause violates that very order by exceeding the express page limitation, the response does not adequately explain Plaintiff's repeated disregard of court orders in this case.  Instead, the response makes wild accusations, few if any of which have any relevance to the show-cause order.  For example, Plaintiff states that "even though Mr. Wertz already married to [sic] his pretty wife in Redmond, OR; he decided to marry Ms. Wertz as she was knocked up with his child and allowed her mothers [sic] AZ property to be whored out for the 'Epstein Style' banking Ponzi . . . ." (Doc. 58 at 1.)  Plaintiff disparages "the useless Andy Struve," who is "the ex-husband of the petitioner," and makes various inflammatory accusations regarding Struve that need not be reproduced here.  (*Id.* at 4.)  Plaintiff also includes disrespectful invective aimed at the Court, stating, for example, that "their [sic] is so much corruption in your court (if it is a real court)," that the undersigned judge has an "unusual last name" and has been "enticed by the highly lucrative scheme" of "murder and fraud" and "taking over our world," and that "[h]opefully this judge doesnt [sic] dress up in his wife's clothes and makeup like Andy did and begged to be loved as he asked to be raped." (*Id.* at 2-3.) Plaintiff claims that the undersigned judge "has a Killian on an easement, a Johnson on an easement" and is "connected to companies that built homes at the Durango Mountain Resorts," such that the undersigned judge "has a conflict of interest." (*Id.* at 6.)  Plaintiff demands that this case "be moved to a real Federal court one without collusion; and coersion [sic] . . . a real court of law." (*Id.* at 7-8.)

"It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed

1   with in a Court, because they are necessary to the exercise of all others."  *Chambers v.*
2   *NASCO, Inc.*, 501 U.S. 32, 43 (1991) (cleaned up).  "For this reason, Courts of justice are
3   universally acknowledged to be vested, by their very creation, with power to impose
4   silence, respect, and decorum, in their presence, and submission to their lawful mandates."
5   *Id.*  "These powers are governed not by rule or statute but by the control necessarily vested
6   in courts to manage their own affairs so as to achieve the orderly and expeditious
7   disposition of cases."  *Id.*

8          Furthermore, "[p]ursuant to Federal Rule of Civil Procedure 41(b), the district court
9   may dismiss an action for failure to comply with any order of the court."  *Ferdik v.*
10  *Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992).  "District courts have the inherent power to
11  control their dockets and, in the exercise of that power they may impose sanctions
12  including, where appropriate, dismissal of a case."  *Id.* (cleaned up).[1]  "In determining
13  whether to dismiss a case for failure to comply with a court order the district court must
14  weigh five factors including: (1) the public's interest in expeditious resolution of litigation;
15  (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4)
16  the public policy favoring disposition of cases on their merits; and (5) the availability of
17  less drastic alternatives."  *Id.* at 1260-61.

18         This case has already consumed a disproportionate share of judicial resources.  The
19  public's interest in expedition resolution of litigation and the Court's need to manage its
20  docket weigh heavily in favor of dismissal.  The risk of prejudice to the defendants is great,
21  as Plaintiff's "pattern of filing incomprehensible motions, paired with voluminous
22  unrelated exhibits" (Doc. 53 at 2) threatens to drive up litigation costs unnecessarily.
23  Furthermore, the FAC is largely incomprehensible and this action has no probability of
24  surviving on its merits.  This weakens the force of the public policy favoring disposition
25  of cases on their merits.  Moreover, in light of all the circumstances here, including
26  Plaintiff's repeated infractions, malicious invective, inability to adhere to the federal and

27
28

---

[1]     *See also Link v. Wabash R. Co.*, 370 U.S. 626, 630-32 (1962) (holding that "the permissive language in Rule 41(b) authorizing a motion by the defendant" does not abrogate the inherent power of the court to dismiss sua sponte).

local rules, and the obvious and uncurable deficiencies on the merits, the Court concludes that dismissal with prejudice is the only appropriate course of action.  No less drastic alternatives would suffice.

Accordingly,

**IT IS ORDERED** that Plaintiff's claims are dismissed, with prejudice, as a sanction for Plaintiff's failure to comply with court orders.  The Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 11th day of September, 2023.

Dominic W. Lanza
United States District Judge